1
2
3
4
5
6
7                      UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA              Case No. 18-cr-00466-BLF (NC)
11                   Plaintiff,
                                           **ORDER GRANTING TEMPORARY**
12        v.                               **RELEASE FROM CUSTODY**

13   MICHAEL ABRAHAM CAZARES,              Re: ECF 327
14                   Defendant.
15

16          Defendant Michael Abraham Cazares moves the Court to reconsider the order

17   detaining him pending trial.  ECF 327.  The motion presents a difficult question of public

18   safety.  On the one hand, the Court in August 2019 detained Cazares after determining that

19   he was a danger to the community.  On the other hand, Cazares is detained at the Santa

20   Rita Jail where 15 inmates have been diagnosed with COVID-19 and he is at risk for

21   contracting and spreading this deadly virus to other inmates, jail staff, and the community.

22   In his motion and as confirmed in a supplemental investigation by the Court's Pretrial

23   Services Unit, Cazares has identified a home where he could reside under 24-hour

24   lockdown in the custody of his mother in Soledad, California.  Balancing the risks to

25   public safety, the Court finds that Cazares has shown a "compelling reason" for temporary

26   release from custody under 18 U.S.C. § 3142(i) subject to a combination of conditions set

27   forth at the end of this order.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## I.    Case Background

Cazares and 14 co-defendants were charged in a 10-count indictment.  ECF 1. Cazares is charged in the first three counts with a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (count one); conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (count two); and conspiracy to commit assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(6a) (count three).  He entered a not guilty plea and awaits trial.  On February 24, 2020, the trial judge denied Cazares's motion to dismiss the indictment, to disclose informants and victims, and to sever the remaining defendants at trial.  ECF 284.

Cazares was ordered detained pending trial by the undersigned magistrate judge on August 26, 2019.  ECF 190.  The Court detained him as a danger to the community. Cazares waived written findings.  *Id.*

Cazares now moves the Court to reconsider his detention.  ECF 327.  The prosecution opposes the motion and seeks Cazares' continued detention.  The Court considered Cazares's motion and reply, three briefs filed by the prosecution, arguments made at two hearings, a supplemental investigation by Pretrial Services, and judicially noticeable facts set forth in this Order.

The Court ordered the prosecution to provide notice to crime victims before the first hearing on Cazares's motion for release.  ECF 328.  When the victim could not be notified, the Court continued the hearing by one week.  The prosecution then stated that the victim was notified and did not wish to address the Court at the second part of the hearing.  ECF 332.

## II.    Findings as to COVID-19 Response at Santa Rita Jail

Cazares is detained at Santa Rita County Jail, an Alameda County facility in Dublin, California, under contract with the United States Marshals Service.  This "mega jail" is the third largest facility in California and the fifth largest in the nation.  *See Babu et al. v. Ahern et al.*, Case No. 18-cv-07677-NC, Dkt. No. 61.  It houses inmates in all classification levels including federal detainees.  *Id.*  Over 29,000 inmates are booked into

United States District Court
Northern District of California

1  Santa Rita each year.  *Id.*  As of April 14, 2020, Santa Rita houses 1,896 inmates.  *See*

2  https://www.alamedacountysheriff.org/admin_covid19.php.  On March 1, 2020, Santa Rita

3  housed 2,597 inmates.  The Santa Rita Jail population has been reduced through

4  collaborative efforts within the state, county, and federal justice system to respond to the

5  threat of the COVID-19 public health emergency.  For example, Alameda County Sheriff

6  Gregory Ahern sent a letter to all local police departments requesting that they cite and

7  release any arrestee who does not compromise public safety to minimize the potential

8  COVID-19 exposure to the SRJ population.  As a result of this letter, bookings at SRJ have

9  been greatly reduced according to the Sheriff.  *Id.*

10      This Court issued its Criminal Case Standing Order Regarding Procedure for

11  Review of Detention Orders in Light of Coronavirus Pandemic on March 16, 2020.  *See*

12  https://www.cand.uscourts.gov/wp-content/uploads/judges/cousins-

13  nc/NCcrimstandingpandemic31620.pdf.  Cazares filed his motion for review on March 31

14  pursuant to that Order.  Cazares does not identify his age or any preexisting health

15  concerns that would pose him a greater risk of infection, or would present a more severe

16  consequence of infection, than any other person.  As far as the Court is aware, Cazares is

17  healthy and has not been diagnosed with illness from exposure to COVID-19.

18      The prosecution argued in opposition that "it is conceivable that Cazares' risk of

19  exposure is lower in custody, because the facility strictly controls outsiders' access, and

20  has taken great measures to avoid the spread of COVID-19" and that "the risk that Cazares

21  himself will be infected simply as a result of detention is likely low and manageable."

22  ECF 330 at 13, 15.  The prosecution further opined on April 2 that "[g]iven that there are

23  no reported cases of COVID-19 infection in Santa Rita Jail . . . Cazares cannot establish

24  that his continued detention substantially elevates his risk of infection above the general

25  population's current risk."  ECF 330 at 15.  The Court invited the prosecution to file a

26  supplemental brief and evidence in support of these arguments.

27      Between the time of Cazares' motion and this order, the number of positively

28  infected inmates at Santa Rita Jail went from zero to 15.  *See*

https://www.alamedacountysheriff.org/admin_covid19.php.   Six of the infected inmates are reported to have completely recovered. *Id.* Twenty-six inmates are currently categorized as "red," meaning that they are "displaying symptoms consistent with COVID-19." *Id.* Forty-seven inmates are categorized as "orange," meaning that they are "considered at increased risk for COVID-19 complications (pregnant, older than 65, chronic medical conditions)." *Id.* Santa Rita Jail has conducted 74 tests for the virus: 42 were negative, 15 were positive, and 17 await results. *Id.* A nurse assigned to the jail, as well as a second staff member, tested positive for COVID-19. *Id.*; *see also* https://www.mercurynews.com/2020/03/26/alameda-county-jail-reports-first-coronavirus-case-a-nurse/.

In light of these developments, the prosecution's supplemental opposition clarified that "[t]o the extent the government's brief implied the risk of inmates contracting COVID-19 in Santa Rita is low" —it did—"the government intends only to assert that the facility is taking strong steps to prevent the spread of COVID-19." ECF 332 at 2. The prosecution did not cite to any expert witness testimony or analysis to support its assessment of the infection risk in jail generally or at Santa Rita Jail in particular.

### III.   Analysis

Title 18 U.S.C. § 3145(b) allows for a person ordered detained by a magistrate judge to file a motion for revocation or amendment of that order. Further, 18 U.S.C. § 3142(i)(4) states that a judicial officer may "permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason.*" (Emphasis added). Here, the defendant presents two reasons for his release that the Court finds compelling, both related to the current coronavirus pandemic. First, Cazares cites the health risk posed by his detention at Santa Rita Jail. Second, Cazares wishes to take care of his eleven-year-old son while schools are canceled so that his son's mother can continue to work at her job in the health care industry.

Due to the novel coronavirus pandemic, we are in "extraordinary times." *In the*

*Matter of the Extradition of Alejandro Toledo Manrique*, Case No. 19-mc-71055-TSH, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020).  This is a global crisis with exponentially increasing infections and hundreds of thousands of deaths.  The President of the United States has declared a National Emergency.  https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.  Community transmission of the virus is widespread in the State of California, which has one of the largest numbers of confirmed cases in the country.  https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. The Governor has issued an Executive Order declaring a State of Emergency and directing all Californians to stay home to minimize public interaction.  *See* https://www.fmcsa.dot.gov/emergency/california-governor-newsom-shelter-place-executive-order-n33-20.  Counties in the San Francisco Bay Area have instituted and extended shelter-in-place orders requiring social distancing; local schools and businesses are closed.  https://www.latimes.com/california/story/2020-03-30/bay-area-extends-coronavirus-shelter-in-place-order-through-at-least-may-1.  Our Court has closed three of its four courthouses, vacated criminal and civil trials, suspended grand jury proceedings, restricted in-person use of its facilities, and limited its operations.  *See* https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_72_3-16-2020.pdf, https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_73_amended_3-25-2020.pdf.  These restrictions aim to follow directions from the Centers for Disease Control and Prevention recommending frequent hand-washing, avoiding close contact with other people, cleaning and disinfecting frequently-touched items and surfaces as much as possible, and avoiding groups of more than 10 people.  *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

The pandemic has now reached U.S. jails and prisons.  In the United States Bureau of Prisons facilities, 444 inmates and 248 staff have positive tests, and 14 inmates have

1   died from the virus as of April 14.  *See* www.BOP.gov. *See also,*

2   https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html (noting—as of

3   March 30, 2020—over one hundred positive tests for coronavirus at Cook County jail in

4   Chicago, almost 80 positive tests in Michigan prisons, nearly 200 cases at Rikers Island

5   jail complex in New York, and almost forty cases in federal prisons including one death at

6   the Bureau of Prison's Oakdale, Louisiana facility); *see also United States v. Garlock*,

7   Case No. 18-cr-00418-VC, 2020 WL 1439980, at *1 ("The chaos has already begun inside

8   federal prisons—inmates and prison employees are starting to test positive for the virus,

9   quarantines are being instituted, visits from outsiders have been suspended, and inmate

10   movement is being restricted even more than usual") (citing

11   https://www.wsj.com/articles/jails-release-prisoners-fearing-coronavirus-outbreak-

12   11584885600).

13      Jails and prisons present extraordinarily dangerous conditions for the spread of the

14   virus.  *See United States v. Stephens*, 2020 WL 1295155 (citing Joseph A. Bick, *Infection*

15   *Control in Jails and Prisons*, 45 Clinical Infections Diseases 1047 (Oct. 2007),

16   https://doi.org/10.1086.521910, which found that the "probability of transmission of

17   potentially pathogenic organisms is increased by crowding, delays in medical evaluation

18   and treatment, rationed access to soap, water, and clean laundry, [and] insufficient

19   infection-control expertise"); *see also Xochihua-Jaimes v. Barr*, Case No. 18-cv-71560

20   (9th Cir. Mar. 24, 2020) (stating that "public health authorities predict" the "rapidly

21   escalating public health crisis" "will especially impact immigration detention centers").

22      Dr. Brie Williams, Professor of Medicine at UCSF with expertise in health issues

23   affecting prisons, opined in this case that "[b]ecause inmates live in close quarters, there is

24   an extraordinarily high risk of accelerated transmission of COVD-19 within jails and

25   prisons."   ECF 333-1 (Affidavit of Brie Williams, M.D.) at p. 3.  Dr. Williams states that

26   because "[i]nmates share small cells, eat together and use the same bathrooms and sinks,"

27   "social distancing in most facilities [is] virtually impossible . . . compounded by

28   inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash

hands." *Id*.

Cazares argues in his motion that "there is a health risk for all defendants detained in close quarters at the Santa Rita Jail, where 'social distancing' is impossible." ECF 327 at 4.  The Court agrees.  Full compliance with CDC recommendations—frequent hand-washing, avoiding close contact with other people, cleaning and disinfecting frequently-touched items and surfaces as much as possible, and avoiding groups of more than 10 people—is not possible there. The necessarily close quarters and limited hygienic options for inmates of the Jail increases their risk of infection, which in turn risks the wellbeing of jail staff, their families, and the general community.[1]  The Court FINDS that the unprecedented, extremely serious health risk posed by continued jail detention constitutes a compelling reason for temporary release under 18 U.S.C. § 3142(i), where an alternative custodial residence has been identified.

Cazares also argues that his family especially needs his assistance at this time.  ECF 327 at 5. Cazares wishes to care for his eleven-year-old son while schools are closed so that his son's mother can work in her support staff position for Clinica de Salud, a health care clinic in King City.  *Id*.  It is impossible to overstate the crucial role of health care personnel at this time.  The Court FINDS that this too presents a compelling reason for temporary release under 18 U.S.C. § 3142(i).

Finally, Pretrial Services on April 8 reported that it had conducted a virtual home

---

[1] Reduction of the Jail population directly serves the interests of the community at large. Other jurisdictions are taking similar measures to reduce jail populations. *See, e.g.*, https://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-coronavirus (Los Angeles County jail population reduced by 600 individuals over two weeks); https://www.newsandtribune.com/news/officials-thin-jail-population-to-prevent-spread-of-covid/article_b3899a6c-6ad8-11ea-8fea-072a24324cc4.html (Indiana counties reduce jail populations to ensure further distance between inmates); https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-19%20032020.pdf?ver=2020-03-20-115517-333 (Chief Justice of the Supreme Court of Montana instructing  judges to "release, without bond, as many prisoners as you are able" because "due to the confines of [correctional] facilities, it will be virtually impossible to contain the spread of the virus").

1   assessment of the proposed Soledad residence.  Pretrial Services recommended that

2   Cazares remain detained, but did not identify any apparent issues during the virtual

3   walkthrough of the residence.

4       Although the Court previously found that Cazares constituted a danger to the

5   community, the COVID-19 pandemic changes the calculus.  Cazares now has serious,

6   potentially life-threatening incentives to obey the conditions of his release.  Not only will

7   Cazares be incentivized to comply with the conditions of his release to temporarily remain

8   out of jail, Cazares is further incentivized to remain in place and avoid social contact lest

9   he contracts COVID-19.  These changed conditions mitigate Cazares's risk of danger.

10      For these reasons, the Court ORDERS Cazares temporarily released into the

11  custody of his mother, Sylvia Veliz, in Soledad.  Veliz must by April 17 co-sign a

12  $100,000 bond for her son and act as his custodian.  Cazares is subject to these special

13  conditions while on release, in addition to standard conditions of supervision:

14      • Cazares is subject to 24-hour home incarceration to be enforced by location

15          monitoring technology to be determined by Pretrial Services.  He may leave

16          the residence only for necessary medical services and Court appearances

17          with the prior approval of Pretrial Services.  He may not change his

18          residence without advance approval of Pretrial Services.  He may not leave

19          the Northern District of California.  He may not apply for documents to

20          depart the United States and must surrender any passports to Pretrial

21          Services by April 20.

22      • Cazares shall be remanded back into custody on June 15 (approximately 60

23          days from this order), subject to extension by further Court order.  Pretrial

24          Services must make a recommendation to the Court by June 8 as to whether

25          the time period of temporary release should be extended.  The parties may

26          submit briefs by June 10.

27      • Cazares or his mother must maintain video conferencing capabilities to allow

28          for remote or virtual monitoring by Pretrial Services.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

- Cazares must report and disclose to Pretrial Services when any cohabitant, including himself, exhibits any symptom of any illness.
- Cazares may not commit any crimes.
- Cazares may not possess any firearm or weapon.
- Cazares may not use or possess any narcotic or controlled substance.
- Cazares may not contact any co-defendant outside the presence of his attorney.
- Cazares may not contact any victim in this case.
- Cazares must comply with the Shelter-in-Place order issued by California Governor Gavin Newsom, dated March 19, 2020, and any further extensions of that order.  *See* Executive Order N-33-20, Exec. Dep't State of Cal. (Mar. 19, 2020); *see also infra* n.3.
- If Cazares violates any of these conditions, he will be detained for the remainder of the case and the bond may be forfeited.  If he commits new crimes he may face new charges that will carry an increased penalty if committed while on pretrial release.

The Court sets a further telephonic conference for **April 17, 2020, at 2:30 p.m.** to determine whether any additional conditions of release, or modifications, are appropriate. Cazares and Ms. Veliz must participate in this hearing.

This temporary release order is effective at **noon on April 15, 2020,** and will be communicated to counsel for the parties and to USMS, Santa Rita Jail, and Pretrial Services. The prosecution is ordered to provide immediate notice to crime victims. The Pretrial Services officer is asked to prepare a bond form that tracks the conditions of release set forth in this order.

**IT IS SO ORDERED.**

Dated:  April 14, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

9