**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| USA,<br><br>                Plaintiff,<br><br>   v.<br><br>MICHAEL ABRAHAM CAZARES,<br>a/k/a "Lil Rhino,"<br><br>                Defendant. | Case No. 18-cr-00466-BLF-1<br><br>**ORDER GRANTING UNITES STATES' MOTION FOR REVOCATION OF PRETRIAL RELEASE ORDER**<br><br>[Re: ECF 342] |

The United States appeals Magistrate Judge Nathanael Cousins' April 14, 2020, order ("Release Order" at ECF 335) granting temporary release of Defendant Michael Cazares from custody pending trial. Motion, ECF 342. The Court stayed the pretrial release of Cazares pending appeal (ECF 337) and held a telephonic hearing on April 21, 2020 (the "Hearing"). For the reasons stated on the record and discussed below, the Court GRANTS the United States' Motion for Revocation of Cazares's Pretrial Release Order. Consequently, Cazares shall remain detained pending trial under 18 U.S.C. § 3142(e)(1).

**I. BACKGROUND**

The Indictment in this matter was filed on September 27, 2018. Indictment, ECF 1. It charges fifteen individuals as members of a criminal enterprise, consisting of members and associates of the Nuestra Familia prison gang and Norteño street gangs in Salinas, California and the surrounding areas (the "Enterprise"). Indictment ¶ 40. Among other activities, members and associates of the Enterprise are alleged to have committed crimes such as attempted murder, narcotics trafficking, and other acts of violence. *Id.* ¶ 41. According to the indictment, Norteño gang members pledge their allegiance and loyalty to Nuestra Familia and are instructed on its rules,

rituals, and obligations. *Id.* ¶ 3. Nuestra Familia enforces its rules and promotes discipline among its members and associates by assaulting and threatening those individuals who violate the rules or pose a threat to the organization. *Id.* ¶ 4. Inside prisons and local jails, all Norteños work together to maintain the structure and follow the rules of Nuestra Familia. *Id.* ¶ 10.

In Monterey County Jail, Norteños are separated from other inmates and are housed together in certain housing units (*i.e.*, D-Pod or K-Pod). Indictment ¶ 25. The indictment alleges that if a member of Norteño or Nuestra Familia commits a serious violation of the Nuestra Familia rules, he is subject to "removal" from the housing unit at the jail. *Id.* ¶ 10. The purpose of a "removal" is to literally remove an inmate from the housing unit (and his status as a Norteño in general) by killing that inmate or inflicting as much bodily harm as possible. *Id.* ¶ 34. A "removal" involves the stabbing of the target by at least one "hitter" followed immediately by a physical assault without weapons by at least two individuals called "bombers." *Id.* ¶ 36. The purpose of the subsequent beating is to inflict maximum damage to the victim, while giving the "hitters" time to discard the weapon and wash the blood off or change clothes. *Id.*

Defendant Cazares is alleged to have been an active member of the Enterprise. Indictment ¶ 59. Defendant Cazares (a/k/a "Lil Rhino") has allegedly been a member of the Soledad Vatos Locos ("SVL") Norteño street gang since at least May 2012. *Id.* He was housed in Monterey County Jail from at least October 26, 2012 through September 23, 2013. *Id.* The Indictment focuses on seven "removals" and charges those in leadership who approved the removals, those who relayed the approvals, the "hitters," the "bombers," and anyone else who facilitated the attacks. *Id.* ¶¶ 64-71. Specifically, Cazares is alleged to have been the designated "hitter" for the attack and stabbing of Victim 4 in the face, head, and neck using a jail-made weapon. *Id.* ¶ 68.

The charges in the indictment against Cazares are the following:

- Count 1: 18 U.S.C. § 1962(d) – Racketeering Conspiracy (under Racketeer Influenced and Corrupt Organizations Act, ("RICO"))
- Count 2: 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Attempted Murder in Aid of Racketeering
- Count 3: 18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a Dangerous

1  Weapon in Aid of Racketeering

2  On August 26, 2019, following a detention hearing, Magistrate Judge Cousins ordered
3  Cazares detained based on a finding that he presented a danger to the community. *See* ECF 190.
4  On March 31, 2020, Cazares filed a motion asking Judge Cousins to reopen his detention hearing
5  and reconsider the previous detention order under 18 U.S.C. § 3145, citing COVID-19 pandemic as
6  basis for reconsideration. ECF 327. The Government opposed the motion for release arguing that
7  Cazares continues to present a serious danger to the community. ECF 330. Judge Cousins heard
8  the matter on April 9, 2020, and on April 14, 2020, issued an order granting Cazares temporary
9  release from custody under certain conditions. Release Order. Specifically, the restrictions that
10 Judge Cousins imposed include, *inter alia*, : (1) a $100,000 bond co-signed by Cazares's mother,
11 Sylvia Veliz, who shall act as his custodian; (2) 24-hour home incarceration to be enforced by
12 location monitoring technology to be determined by Pretrial Services; (3) ability to maintain video
13 conferencing capabilities to allow for remote or virtual monitoring by Pretrial Services; (4) no use
14 or possession of any firearms, weapons, or controlled substances; (5) no contact with co-defendants
15 outside the presence of his attorney; (6) no contact with victims; and (7) compliance with COVID-
16 19 shelter-in-place orders. *Id*. at 8-9.

17 This Court, upon a motion from the Government, stayed the pretrial release of Cazares
18 pending appeal (ECF 337) and the parties filed their respective briefs (ECF 342 and ECF 343). Mr.
19 Cazares, through his counsel, consented to appear telephonically at the hearing on the Government's
20 request to review the Release Order. ECF 339. The Court held a telephonic hearing on April 21,
21 2020 (the "Hearing"). Attorneys for the parties; a representative of Pretrial Services; and Mr.
22 Cazares appeared by telephone at the Hearing.

23 **II.   LEGAL STANDARD**

24 This Court reviews de novo a magistrate judge's order regarding pretrial detention. *United*
25 *States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990) ("There are ample reasons, then, for
26 concluding that the district court's review of a magistrate's detention order is to be conducted
27 without deference to the magistrate's factual findings.").

28 Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*., persons facing trial are

3

to be released under the least restrictive condition or combination of conditions that will "reasonably assure" the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(c)(2); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Only in rare circumstances should release pending trial be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Gebro*, 948 F.2d at 1121 (citing *Motamedi*, 767 F.2d at 1405). On a motion for pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Gebro*, 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1406-07.

Section 3142(g) of the Bail Reform Act contains the following factors to evaluate whether there are any conditions of release that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person including: (A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407. "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121 (citing *Winsor*, 785 F.2d at 757); *see also Motamedi*, 767 F.2d at 1408. Evidence of guilt is relevant only in terms of the likelihood that the defendant will fail to appear or will pose a danger to the community. *Winsor*, 785 F.2d at 757.

After a court determines that a defendant should be detained or released pretrial, the decision may be reopened at any time before trial:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.C.S. § 3142(f). A judicial officer may, by subsequent order, permit the temporary release of a defendant in custody, if the judicial officer determines such release to be "necessary for preparation of [defendant's] defense or for another compelling reason." 18 U.C.S. § 3142(i).

In the past few weeks, district courts across the nation have been grappling with a large number of motions for release in light of the COVID-19 global pandemic. In reviewing these motions, some district courts have adopted a framework that accounts for the unprecedented circumstances COVID-19 pandemic presents *See e.g.*, *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *United States v. Miller*, No. CR 20-12-BLG-DLC-1, 2020 WL 1864633, at *2 (D. Mont. Apr. 14, 2020). These courts considered motions to reopen detention hearings on COVID-19 grounds on a case-by-case basis under § 3142(i)'s "compelling reason" standard by evaluating the following factors: "(1) original grounds for pretrial detention; (2) specificity of the defendant's stated COVID-19 concerns; (3) extent the proposed release plan mitigates or exacerbates other COVID-19 risks to the defendant; and (4) likelihood defendant's proposed release would increase COVID-19 risks to others." *See Clark*, 2020 WL 1446895, at *3; *Miller*, 2020 WL 1864633, at *2. The Court finds this framework appropriate for deciding the present Motion because not only does it expressly incorporate consideration of the circumstances under which Cazares seeks to reopen his detention hearing (*i.e.*, COVID-19 pandemic), it also encompasses the traditional test under § 3145(g) by weighing "the original grounds for pretrial detention."

### III.   DISCUSSION

There is no doubt that the global COVID-19 pandemic has not only cost many lives, it has also changed how we all live – at least for now. The Governor of California has issued an Executive Order declaring a State of Emergency and directing all Californians to stay home to minimize public

5

interaction.[1] Counties in the San Francisco Bay Area, where this Court is located, have instituted and extended shelter-in-place orders requiring social distancing and closing of local schools and businesses.[2] Three of the four federal courts in this District are closed, criminal and civil trials are suspended, and only limited in-person operations take place in the one courthouse that remains open. *See* General Order 72; General Order 73.

Cazares correctly points out that since the start of COVID-19 pandemic, the Federal Bureau of Prisons, directed by the Attorney General of the United States, has been releasing certain prisoners to home confinement after individualized review – considering each inmate's vulnerability as well of the seriousness of the crimes charged. *See* Cazares's Opposition to Government's Motion ("Opp'n") at 6, ECF 343; *see also* https://www.justice.gov/file/1262731/download (last visited April 21, 2020); https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited April 21, 2020).

Based on the foregoing, the Court finds that a reexamination of Cazares's pretrial detention is warranted. With that in mind, the Court evaluates below Cazares's particular circumstances, as required by the Bail Reform Act and under the COVID-19 framework to determine whether Cazares has established "compelling reasons" warranting his release. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[T] the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."); *see also Clark*, 2020 WL 1446895, at *3 ("[W]hether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic ought to more properly considered on a case-by-case basis under the 'another compelling reason' prong of § 3142(i)[.]").

**A.   Original Grounds for Pretrial Detention**

On August 26, 2019, following a detention hearing, Magistrate Judge Cousins ordered Cazares detained, based on a finding that he presented a danger to the community. *See* ECF 190. After a *de novo* review of the record, and for the reasons stated below, the Court finds that Cazares

---

[1] https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf (last visited April 21, 2020).

[2] *See e.g.*, https://www.sccgov.org/sites/covid19/Documents/03-31-20-Health-Officer-Order-to-Shelter-in-Place.pdf (last visited April 22, 2020).

continues to present a danger to the community. *See Koenig*, 912 F.2d at 1192.

### 1. The Nature of Charges against Cazares

Cazares is charged with violent and serious crimes. The Indictment alleges that, on July 10, 2013, Cazares and Jeffrey Lopez – a co-defendant who has pled guilty in this case (*see* ECF 221, 222) – conspired and attempted to murder Victim-4 while housed in Monterey County Jail. Indictment ¶ 68. Cazares was allegedly the designated "hitter" for the attack and stabbed Victim 4 in the face, head, and neck using a jail-made weapon. *Id.* The Indictment further alleges that Cazares has been a member of the SVL Norteño street gang since May 2012. *Id.* ¶ 52. It also alleges that Cazares has participated in the crimes of attempted murder, assault, and drug trafficking for the benefit and in furtherance of the Enterprise, while in Monterey County Jail. *Id.* The seriousness and the violent nature of the crimes Cazares is charged with weighs against his release.

### 2. The Weight of the Evidence against Cazares

The weight of the evidence is the least important factor and, and "the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121 (citing *Winsor*, 785 F.2d at 757); *see also Motamedi*, 767 F.2d at 1408. "[T]he evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *Winsor*, 785 F.2d at 757. Accordingly, the Court give little to no weight to the evidence against Cazares in this case.

### 3. Cazares's History and Characteristics

Cazares has had numerous and continuous contacts with the criminal justice system dating back to age 12. Motion at 8[3]. Cazares's criminal history reflects at least five misdemeanor convictions and one felony conviction as a minor, and his more recent convictions include two felony offenses with gang enhancements. Bail Report at 9. As an adult, Cazares was convicted of robbery and a subsequent count of participating in a criminal street gang – for which he was sentenced to 68 months in prison. *Id.* at 7-8. While evading arrest for his robbery charge, Cazares

---

[3] The Government relies on information contained in the initial Pretrial Services bail report ("Bail Report") which has been submitted under seal and reviewed by the Court and provided to defense counsel.

7

hid in a residence in Soledad, California – where several others (including fellow SVL Norteño gang members and an eight-year-old boy) were present – and refused to obey instructions from deputies executing the arrest warrant. As a result, Cazares was arrested and charged with child cruelty (possible injury/death) and being under the influence of a controlled substance. Bail Report at 8. Those charges were later dismissed, but Cazares was convicted of and sentenced for the robbery. *Id*. While in custody, serving time for his robbery conviction, he was found to be in possession of controlled substances – adding two years to his sentence. Bail Report at 8. In fact, Cazares was in state custody when he allegedly committed the serious crimes charged in this Indictment. The Government has also submitted argument regarding Cazares's possible connection to a 2011 unsolved murder, recent allegations that he was in possession of a weapon while in Federal custody and conduct of a co-defendant. No charges have been filed in those other matters and the Court does not taint Cazares with the conduct of others. The Court has disregarded these arguments.

In sum, Cazares's long criminal history, proven gang ties, and history of committing crimes while in custody or on probation weigh heavily against his pretrial release.

### 4. Danger to the Community

On August 13, 2019, Pretrial Services recommended that Cazares remain detained because he poses significant risk of danger to community based on the following factors: (1) a history of illicit substance use; (2) the nature of the instant offense; (3) a pattern of similar criminal conduct related to violence, firearms, and drugs; and (4) his gang ties. Bail Report at 9. Pretrial Services expressed its concern regarding Cazares's "criminal history dating back to age 12 which has continued on unabated" – history that includes at least five misdemeanor convictions and one felony conviction as a minor, and his more recent convictions include two felony offenses with gang enhancements. *Id.* Pretrial services noted one mitigating factor: Cazares does not appear to have any mental health issues. *Id.* At the Hearing, Pretrial Services reiterated its recommendation that Cazares remain in custody as a danger to the community. Based on this evidence, the Court finds that Cazares remains a danger to the community as well as to witnesses and victims in this case.

And the proposed release plan – release to his mother's house on a 24/7 lockdown with location monitoring – does not sufficiently mitigate these concerns. First, Cazares has a long history

8

of breaking the law while in custody or on probation – and nothing in the record suggests that he has changed his ways and can now be trusted to obey the terms of his temporary release. Second, the Court is not persuaded that being in his mother's custody would ensure Cazares's compliance with his release conditions or mitigate the risks he poses to the community. The record shows that Cazares committed several offenses while living in his mother's house – including the armed robbery he was convicted of in 2012. The Government informs the Court – and Cazares does not contest – that on March 20, 2020, the Soledad Police Department, in coordination with a federal law enforcement SWAT team, conducted a search of Cazares's mother's residence pursuant to a search warrant related to a residential burglary where Cazares's adult sister (also living at the residence) is a suspect. *See* Mot. at 15. In response, Cazares asserts that "if the Court is concerned with the presence of the defendant's sister at the residence, because of her recent arrest, then the sister will relocate to her boyfriend's residence." Opp'n at 11-12. Aside from the sister's presence in the residence, the Court is concerned with Cazares's mother's inability to effectively supervise the conduct of her adult children living in her home.

Third, while location monitoring may offer useful information about Cazares's whereabouts, it provides little to no information about what he is doing and who he is communicating with – making it far too easy for Cazares to resume his involvement with the gang. And, as a district court in Maryland noted, "location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857, Case No. PWG-19-140-13 (D. Md. Mar. 17, 2020).

\*\*\*

In conclusion, the first factor weighs heavily against releasing Cazares because the charges against him are for violent and serious crimes; he is an adjudicated gang member and has a long history of criminal conduct (some of which he committed while in custody or on probation); and he poses a serious threat to the safety of the community and witnesses in this case.

### B. Specificity of Cazares's Stated COVID-19 Concerns

Cazares has not identified any medical conditions that would make him particularly vulnerable to COVID-19. As far as the Court is aware, Cazares is a healthy young man under 30 years of age. The Court is aware that anyone can contract the virus and the severity of the illness cannot be predicted with any certainty. That said, the Centers for Disease Control and Prevention has identified certain characteristics and preexisting health conditions as higher risk for severe illness from COVID-19[4] – and Cazares, admittedly, is not at higher risk. This means that Cazares is at no higher risk of severe illness than any other inmate at Santa Rita Jail, and at a lower risk compared to others in vulnerable groups.

Cazares also argues that his family "has a strong need for his assistance in caring for his minor son." Opp'n at 11. Cazares's 11-year-old son is being raised by the child's mother, Raquel Vasquez, who works in the healthcare industry. *Id.* The child's school is closed due to the pandemic and thus he needs a caregiver because his mother works and his maternal grandparents cannot properly care for him and help with his schoolwork because they are elderly and do not speak English. *Id.* The Court recognizes the importance and commendable work of all healthcare workers during this pandemic. The Court is also mindful of the difficulty in securing suitable childcare while California is under a shelter-in-place order. However, while the grandparents might not be the ideal caregivers under the circumstances, Cazares's son is not without supervision and care. In balancing the benefit of caring for a minor child – who has been cared for without Cazares's in-person help for the past eight years while Cazares has been in custody – with the danger Cazares poses to the community, the Court finds that this is not a close call.

\*\*\*

In sum, the Court finds that Cazares's specific COVID-19 concerns weigh only slightly in favor of his release because (1) he is not a member of a vulnerable population and (2) his son is not without caregivers.

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited on April 21, 2020).

10

### C.     Release Plan and COVID-19 Risk to Cazares

Cazares argues that he is at a higher risk of contracting the COVID-19 virus while detained at Santa Rita County Jail, an Alameda County facility in Dublin, California, under contract with the United States Marshals Service.  Jails and prisons present particularly challenging conditions for limiting the spread of the virus.  Cazares has submitted a declaration from Dr. Brie Williams, Professor of Medicine at UCSF with expertise in health issues affecting prisons, where she opines that "[b]ecause inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVD-19 within jails and prisons" and "effective social distancing in most facilities is virtually impossible."  ECF 343-1 ¶ 7.  Dr. Williams specifically points out that those prisoners who are "age 50 or older" and those who have "at least one chronic condition" are at high risk of severe illness from COVID-19.  *Id.* ¶¶ 8-10.

Several inmates have tested positive for COVID-19 at Santa Rita Jail, where Cazares is detained.  As of April 21, 2020:

- Santa Rita Jail housed 1,773 inmates,
- Sixteen inmates at Santa Rita County Jail are tested positive for COVID-19 – of those inmates: fourteen completely recovered and two recovered and are no longer in custody,
- Santa Rita Jail had two positive staff or contractor cases,
- Twenty-three inmates were categorized as "red," meaning that they are "displaying symptoms consistent with COVID-19," and
- Fifty-two inmates are categorized as "orange," meaning that they are "well, but considered at increased risk for COVID-19 complications (pregnant, older than 65, chronic medical conditions)."[5]

Santa Rita Jail also has several procedures in place for detecting and managing outbreaks, and specifically COVID-19.[6]  The effectiveness of such measures, however, cannot be known or relied upon at this time.  Thus, as a general matter, the Court is persuaded that the institutionalized

---

[5] https://www.alamedacountysheriff.org/admin_covid19.php (last visited April 22, 2020); https://www.alamedacountysheriff.org/files/COVIDPlan04-05-2020.pdf (last visited April 21, 2020)

[6] *Id.*

11

1  setting of a large jail, such as Santa Rita Jail, presents an increased risk of contracting COVID-19, compared to sheltering in place at one's home and with one's immediate family.

That said, Cazares plans to care for his son, while the child's mother is at work in a clinic. As a result, Cazares would be in daily direct contact with his son, who lives with a high-risk individual (a healthcare worker). Thus, the Court is not convinced that Cazares would be at a lower risk at his mother's home – with his son visiting daily – than he would be in Santa Rita Jail under the COVID-19 procedures.

### D. Release Plan and COVID-19 Risk to Others

Finally, the Court finds that Cazares's release to his mother's residence would pose an additional risk to his mother. Cazares's counsel informs the Court that Ms. Veliz is suffering from diabetes and thus is at high risk from the coronavirus. Jordan Decl. ¶ 9, ECF 343. Cazares is currently detained at Santa Rita jail, where COVID-19 is present. This means that Cazares is potentially an asymptomatic carrier of the virus. If released, Cazares plans to move immediately into his mother's home, where he cannot be quarantined for the recommended 14 days and may infect his mother. Cazares also plans to care for his son, whose primary caregiver is a healthcare worker and another potential carrier of the virus. Introducing Cazares and his son to Cazares's mother's home would increase the risk to his mother – who is in a vulnerable population.

\*\*\*

In conclusion, the Court finds that the balancing of the factors does not warrant Cazares's release. Cazares continues to pose a serious risk to the safety of the community, and that risk overrides Cazares's concerns that he might contract COVID-19 at Santa Rita Jail and his family's need for a caregiver to his son. In addition, Cazares's release plan does not necessarily lower his risk of exposure to the virus and puts his mother at additional risk. Thus, Cazares has not made a showing that his release is necessary for "compelling reasons" under 18 U.S.C § 3142(i).

### IV. ORDER

For the foregoing reasons, the Court GRANTS the United States' motion for Revocation of Pretrial Release Order at ECF 342.

12

**IT IS SO ORDERED.**

Dated: April 23, 2020

_____
BETH LABSON FREEMAN
United States District Judge